UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

JONATHAN RUSHING,

        Defendant.

CR18-16 TSZ

ORDER

THIS MATTER comes before the Court on defendant Jonathan Rushing's motion to suppress "fruits of illegal seizure," docket no. 273, and defendant's motion to suppress "evidence seized pursuant to search warrant," docket no. 274. Having reviewed all papers filed in support of, and in opposition to, the motions, including the photograph and two video recordings submitted on a digital versatile disc ("DVD"), docket no. 303, as Exhibits 1, 2, and 3,[1] respectively, to the Government's response, the Court enters the following order.

---

[1] In its brief, the Government refers to the video recordings as Exhibits 1 and 2, and the photograph as Exhibit 3, *see* Gov't Resp. at 6 n.4 (docket no. 302), but the DVD filed with the Court, docket no. 303, labels the photograph (or "screengrab") as Exhibit 1, and the excerpts of two different body camera recordings as Exhibits 2 and 3.

ORDER - 1

**Background**

In the fall of 2017, investigators began surveilling individuals believed to be part of a drug-trafficking organization, including co-defendants Patrick Tables and Michael Turner, who have since entered guilty pleas and been sentenced in this matter. *See* Palermo Aff. at ¶¶ 21-22 (Dec. 1, 2017) (docket no. 129-7); *see also* Judgment (docket no. 305); Judgment (docket no. 240). On November 8, 2017, officers observed Tables get out of a Dodge minivan and, while standing on Yesler Street in Seattle, speak to Turner, who had arrived in a white Suburban. Palermo Aff. at ¶¶ 17-20 (docket no. 129-7). Both men got in the Suburban, and shortly thereafter, a black Lexus drove up. *Id.* at ¶ 21. The male driver and sole occupant of the Lexus then joined Tables and Turner in the Suburban. *Id.*

The Lexus was registered to Arianna Moyner, the fiancée of Nicholas Pines. *See* Knapp Aff., Ex. 4 to Gov't Resp. (docket no. 302-4). After comparing a photograph of Pines to the individual who had exited the Lexus, one of the investigators, namely Seattle Police Detective Steve Knapp, drew the conclusion that the driver of the Lexus was Pines, who had at least one warrant outstanding for his arrest. *See id.* Detective Knapp later learned that the person he had been observing was defendant Jonathan Rushing. *See id.*

After returning to the Lexus for approximately twenty minutes, defendant left the vehicle and walked toward Pioneer Square. *See* Palermo Aff. at ¶ 21 (docket no. 129-7). Investigators located defendant standing outside Merchant's Cafe and Saloon on Yesler Way and requested that Seattle Police Officers Cole Nelson and David Toner make

contact, telling them a "50/50" chance existed that the suspect was Nicholas Pines. *See* DVD containing portions of Nelson's and Toner's body camera recordings, Exs. 2 & 3 to Gov't Resp. (docket no. 303). While walking toward defendant, Officer Nelson asked defendant for his name. *See* Ex. 2 to Gov't Resp. After defendant responded, "Jonathan," Officer Nelson requested identification and inquired whether defendant had any weapons. *See id.* Defendant denied possessing a weapon. *See id.* Officer Nelson asked defendant if he was sure, and defendant replied, "Positive." *Id.* With his right hand, defendant withdrew his wallet from a pocket, but his left hand remained in a different pocket. *See id.* After two requests by Officer Nelson to take his hand out of his pocket, defendant fled away on foot. *See id.* The entire interaction lasted less than twenty seconds. *See id.*

Defendant was apprehended a few blocks away. *See id.* As soon as defendant was handcuffed by other officers, Officer Nelson stated, "Nicholas Pines, you're under arrest." *See id.* Defendant responded, "Who is Nicholas Pines? I'm Jonathan Rushing." *Id.* Officer Nelson then read the standard *Miranda* warnings, which defendant indicated he understood. *Id.* A different officer, who had located defendant's wallet, asked for and obtained defendant's permission to look at his identification. *Id.* Disagreeing with another officer's suggestion to stand defendant up and take him to a nearby car, Officer Nelson proceeded to search defendant, expressing concern that he might have a weapon and noting that, earlier, defendant would not take his hand of out of his pocket. *Id.* A loaded firearm was discovered during the course of Officer Nelson's search. *Id.*; *see also* Ex. 4 to Gov't Resp.

ORDER - 3

The Lexus was impounded, and on November 9, 2017, Detective Knapp sought a search warrant for the Lexus. Ex. 4 to Gov't Resp. The affidavit for the search warrant did not discuss the drug-trafficking organization under investigation, and instead recited facts, and sought further evidence, relating to defendant's commission of the crime of unlawful possession of a firearm. *See id.* The search warrant affidavit described Pines as having several outstanding warrants for his arrest and a history of firearms possession, but also made clear that defendant had been identified as Rushing, not Pines. *Id.* The search warrant affidavit recounted Rushing's criminal history, which included a conviction for second-degree murder, and reported that the gun recovered from defendant was a stolen Glock Model 42. *Id.* Based on probable cause to believe that the crime of unlawful possession of a firearm had been committed, King County District Judge Anne C. Harper issued a search warrant, directing that the following items, if located in the Lexus, be seized: guns, ammunition or other firearm accoutrements, safes or locked containers, evidence of weapon purchases or identity, and "any other item illegally possessed." *See id.* In executing the search warrant, investigators found, in the glove compartment of the Lexus, a black sock containing several small bags of cocaine base (crack) and methylenedioxymethamphetamine (MDMA). Defendant seeks to suppress the firearm and the controlled substances.

**Discussion**

  A. **Search Incident to Arrest**

The first issue before the Court is whether the evidence seized from defendant's person, including a loaded firearm, was obtained during a valid search incident to arrest.

The Court concludes that an evidentiary hearing is not required to resolve this question because the moving papers fail to identify contested issues of fact. *See* <u>United States v. Cook</u>, 808 F.3d 1195, 1201 (9th Cir. 2015). Defendant contends that Officers Nelson and Toner lacked "reasonable suspicion" to conduct a <u>Terry</u> stop. *See* <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). The Court disagrees. The officers had been asked to approach and identify defendant by narcotics detectives who were "50/50" that defendant was Nicholas Pines. Defendant does not dispute that Pines had at least one warrant outstanding for his arrest, <u>see</u> Def.'s Mot. at 4 (docket no. 274), and the officers therefore had "reasonable suspicion" to conduct a <u>Terry</u> stop to ascertain whether defendant was Pines. *See* <u>United States v. Castro</u>, 379 Fed. App'x 549 (9th Cir. 2010) (holding that a <u>Terry</u> stop was permissible to determine the identity of a passenger in a car previously driven by a person having an outstanding arrest warrant (citing <u>United States v. Crapser</u>, 472 F.3d 1141, 1147 (9th Cir. 2007))).

Defendant accuses the police of "maliciously" pretending not to notice the differences in physical appearance between defendant and Pines. Defendant also asserts that the local law enforcement officers knew or should have known that, on the day of the <u>Terry</u> stop, Pines was in a federal detention facility and could not have been the driver of the Lexus. Defendant offers no evidence to support either of these allegations. These events occurred in the dark of night, and Officers Nelson and Toner were candidly advised that the narcotics detectives were unsure about the suspect's identity. The record reveals no malice and no indication that either the narcotics detectives or the officers conducting the <u>Terry</u> stop were aware of Pines's custody status.

1   The Court is satisfied that the *Terry* stop of defendant was based on "reasonable

2   suspicion" and that, prior to defendant's flight, the *Terry* stop had not transformed into a

3   seizure for purposes of Fourth Amendment analysis.  Officer Nelson would have been

4   entitled during the course of the *Terry* stop to perform a "pat down" for weapons, and

5   thus, his attempt to control defendant's left forearm while defendant's left hand remained

6   concealed in a pocket did not amount to an arrest.  *See* *United States v. Salas*, 879 F.2d

7   530, 535-36 (9th Cir. 1989).

8   The Court further concludes that defendant's subsequent arrest was valid.  At the

9   time, Officer Nelson still believed defendant was Nicholas Pines, for whom an arrest

10  warrant was outstanding, and he did not learn defendant is Jonathan Rushing until later.

11  *See* *Hill v. California*, 401 U.S. 797, 802 (1971).  Moreover, Officer Nelson had probable

12  cause to believe that defendant obstructed a law enforcement officer in the discharge of

13  official duties in violation of RCW 9A.76.020, which defines such behavior as a gross

14  misdemeanor.  The firearm at issue was discovered pursuant to a valid search incident to

15  arrest.  *See* *United States v. Robinson*, 414 U.S. 218 (1973).

16  **B.** **Execution of Search Warrant**

17  The second matter before the Court is whether evidence seized from Pines's

18  fiancée's vehicle (the black Lexus) was obtained pursuant to a valid search warrant.  The

19  Government does not challenge defendant's standing to object to the search of Pines's

20  fiancée's vehicle.  Defendant asserts that the affidavit submitted to obtain the search

21  warrant was deficient in two ways:  (i) the information in the affidavit about Pines is

22  inaccurate and/or incomplete; and (ii) the affidavit is too cursory and does not provide the

23

requisite link between defendant's unlawful possession of a firearm and the Lexus. Defendant's arguments lack merit.

A presumption of validity attaches to an affidavit supporting a search warrant issued by a judicial officer. <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978). To challenge a search warrant affidavit, a defendant must prove, by way of "sworn or otherwise reliable statements of witnesses," that the affiant engaged in either "deliberate falsehood" or "reckless disregard for the truth." <u>Id.</u> "Allegations of negligence or innocent mistake are insufficient." <u>Id.</u> In addition, to invalidate a search warrant, a defendant must show that the misrepresentations or omissions of the underlying affidavit were "essential to the finding of probable cause." <u>United States v. Dozier</u>, 844 F.2d 701, 705 (9th Cir. 1988). An evidentiary hearing concerning a challenge to an affidavit supporting a search warrant is not required when either (i) a defendant fails to make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," or (ii) the affidavit supports a finding of probable cause even if the alleged false statement is disregarded or the omitted information is included. <u>See Franks</u>, 438 U.S. at 155-56 & 171-72. Both of these reasons support the Court's conclusion that an evidentiary hearing is not necessary in this matter.

Defendant has not made any showing that, in applying for the search warrant at issue, Detective Knapp engaged in a deliberate falsehood or reckless disregard for the truth. Defendant complains that Detective Knapp included inaccurate information about Nicholas Pines's criminal history and warrant status, and failed to disclose that Pines was

ORDER - 7

in federal custody on November 8, 2017, and thus, could not have been the person seen in the Lexus or at the Merchant's Cafe and Saloon that evening. Detective Knapp, however, indicated in his search warrant affidavit that defendant was not Pines, but rather had been identified as Jonathan Rushing, an individual with five felony convictions. <u>See</u> Ex. 4 to Gov't Resp. (docket no. 302-4). Defendant fails to explain how, in light of these statements, Pines's criminal history and warrant status were material, and he has offered no evidence that Detective Knapp knew (or should have known) Pines was in a federal detention facility.

Defendant has also not refuted that the search warrant affidavit supports a finding of probable cause even if the allegedly false statements are disregarded or the omitted information is included. Even if the challenged assertions that Pines had "several outstanding warrants" and a "history of firearms possession" were ignored and Pines's custodial status at the time Detective Knapp applied for the search warrant was considered, the affidavit would nevertheless support a finding of probable cause to issue a search warrant for the Lexus. Defendant (not Pines) was observed to be the sole occupant of the vehicle shortly before his arrest, when he was discovered to be in possession of a loaded stolen firearm despite the prohibition resulting from his prior felony convictions. <u>See</u> <u>id.</u> These undisputed facts rendered Pines's warrants and criminal history irrelevant. Moreover, if known and disclosed, Pines's confinement would have added to, not detracted from, probable cause because it tended to eliminate a connection between Pines and the contents of the Lexus.

Contrary to defendant's argument that the affidavit omitted important details[2] and did not link defendant's unlawful gun possession to the Lexus, the reasonable conclusion to be drawn from defendant's sole possession of the vehicle shortly before his arrest while carrying a gun is that other firearms, ammunition, gun paraphernalia, and/or evidence of weapon purchases or identity might be found in the car. In specifically enumerating these items of interest, the search warrant stayed within the bounds of the probable cause supported by Detective Knapp's affidavit. The controlled substances located in the glove compartment fall within either (i) the search warrant's catch-all phrase "[a]ny other item illegally possessed," see id., or (ii) the "plain view" doctrine, pursuant to which officers may seize an object not listed in a warrant if they are lawfully searching the area where it is found and its incriminatory nature is immediately apparent, see Roe v. Sherry, 91 F.3d 1270, 1272 (9th Cir. 1996) (citing Horton v. California, 496 U.S. 128, 135-36 (1990)). Defendant has not made the requisite showing for an evidentiary hearing, and he has provided no basis to suppress the firearm or narcotics at issue.[3]

---

[2] Defendant attacks Detective Knapp's affidavit for not more fully describing his observations of co-defendants Tables's and Turner's activities. Detective Knapp, however, did not seek the warrant at issue to search for controlled substances or evidence related to drug trafficking, and thus, this information was unnecessary and potentially distracting.

[3] In light of its ruling concerning the validity of the search warrant, the Court declines to address the Government's alternative argument that the search at issue would have been permitted under the "automobile exception" to the warrant requirement.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)  Defendant Jonathan Rushing's motions to suppress, docket nos. 273 and 274, are DENIED.

(2)  The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 8th day of October, 2019.

Thomas S. Zilly
United States District Judge